1

2

3

4                                                           **E-FILED on**   07/09/09

5

6

7

8                      IN THE UNITED STATES DISTRICT COURT

9                  FOR THE NORTHERN DISTRICT OF CALIFORNIA

10                             SAN JOSE DIVISION

11

12   SILICON LABS INTEGRATION, INC., a          C-08-04030 RMW
     California corporation (formerly known as
13   Integration Associates Incorporated),

14          Plaintiff,                          ORDER GRANTING IN PART AND
                                                DENYING IN PART DEFENDANT'S
15      v.                                      MOTION TO DISMISS

16   SHMUEL MELMAN,

17          Defendant.

18                                              **[Re Docket No. 18]**

19

20

21      Plaintiff Silicon Labs Integration, Inc. ("SLI") seeks a declaration that it (formerly

22   Integration Associates Inc. ("IA")) has no obligation or liability, contractual or otherwise, to

23   defendant Shmuel Melman ("Melman") for payment for any compensation related to services

24   rendered to IA in connection with Silicon Labs, Inc.'s ("Silicon Labs") acquisition of IA in July of

25   2008.  SLI also brings a claim against Melman for allegedly interfering with SLI's prospective

26   economic advantage.  Melman moves to dismiss the complaint on the bases that: (1) this court lacks

27   personal jurisdiction over Melman; (2) SLI's declaratory judgment claim involves a misuse of the

28   Declaratory Judgment Act; (3) the doctrine of *forum non conveniens* precludes going forward in this

1  court; and (4) SLI's intentional interference with prospective economic advantage claim fails to state

2  a claim upon which relief can be granted.  For the reasons stated below, the motion to dismiss is

3  denied on grounds (1) - (3) and is granted on ground (4).  SLI is given twenty days leave to amend.

### I.  BACKGROUND

5  SLI is a California corporation that designs and manufactures semiconductors for radio

6  frequency, infrared, modem, and power management applications.  Complaint ¶ 8.  Before the

7  events that form the basis for this suit, SLI was known as IA.  Melman is the Chief Executive

8  Officer of Crow Electronic Engineering ("Crow"), an Israeli corporation that manufactures

9  electronic security systems.  *Id.* at ¶ 7.  Crow purchases and utilizes the semiconductor products of

10 IA and Silicon Labs, which is based in Austin, Texas, in its security systems.  *Id.*

11 On June 24, 2008, Silicon Labs announced that it would acquire IA for $80 million.  After

12 the agreement closed, the two companies became known as SLI.  At issue in this case is whether a

13 brokerage or finder's commission agreement existed between IA and Melman.  Melman claims that

14 IA agreed to compensate him for finding a suitable company to acquire IA.  *Id.* at ¶ 10.  Melman

15 further claims that he met with representatives from Silicon Labs in Israel in March of 2008, and

16 encouraged Silicon Labs to consider acquiring IA and its technology.  Decl. of Shmuel Melman ¶

17 14.

18 Once the acquisition closed, Melman contacted SLI regarding the commission to which he

19 contends he was entitled.  Complaint ¶ 10. On August 19, 2008, Melman met with Kurt Hoff,

20 Silicon Labs Vice President of Worldwide Sales, without success regarding his claims.  Melman

21 Decl. ¶ 30.  On August 22, 2008, the instant complaint was filed.

### II.  ANALYSIS

23 **A.      Personal Jurisdiction**

24 For a federal court to exercise personal jurisdiction over a nonresident in a diversity of

25 citizenship case, the proposed subject of jurisdiction must satisfy both the applicable personal-

26 jurisdiction rule of the forum state and constitutional principles of due process.  *Sher v. Johnson*, 911

27 F.2d 1357, 1360 (9th Cir. 1990) (citing *Data Disc, Inc. v. Systems Tech Assoc.*, 557 F.2d 1280, 1286

28 (9th Cir. 1977)).  California's personal-jurisdiction rule states that "a court of this state may exercise

**United States District Court**
For the Northern District of California

C-08-04030 RMW
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS
JAS                                                    2

**United States District Court**
For the Northern District of California

1  jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States."

2  Cal.Code.Civ. Pro. § 410.10.  The state and federal constitutions are coextensive with respect to

3  jurisdiction, so jurisdiction is constrained only by the United States Constitution.  *Data Disc*, 557

4  F.2d at 1286, n.3.  A court may exercise either general or specific jurisdiction over a non-resident

5  defendant.  *Sher*, 911 F.2d at 1361.  SLI concedes that it cannot establish general jurisdiction over

6  Melman without further jurisdictional discovery.  *See* Pl.'s Opp. to Mot. to Dismiss 5 n.1.  In order

7  to exercise specific personal jurisdiction over a nonresident defendant, the Ninth Circuit requires

8  that:

9       (1) The non-resident defendant must purposefully direct his activities or consummate
      some transaction with the forum or resident thereof; or perform some act by which he
10       purposefully avails himself of the privilege of conducting activities in the forum,
      thereby invoking the benefits and protections of its laws;
11       (2) the claim must be one which arises out of or relates to the defendant's
      forum-related activities; and
12       (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e.
      it must be reasonable.

13 *Boschetto v. Hansing*, 539 F.3d 1011, 1016 (9th Cir. 2008).  The plaintiff bears the burden on the

14 first two prongs of this test.  *Id.*  Once the plaintiff has established both of these, the defendant, to

15 avoid the exercise of jurisdiction, must come forward with a "compelling case that exercising

16 jurisdiction would be unreasonable." *Id.*  But if the plaintiff fails at the first step, the jurisdictional

17 inquiry ends and the case must be dismissed.  *Id.* In the absence of an evidentiary hearing, these

18 burdens are satisfied upon a prima facie showing of jurisdictional facts. *Sher*, 911 F.3d at 1361.

19       **1.**     **SLI's Declaratory Judgment Claim**

20       The two disjunctive parts of the first prong, though frequently referred to collectively as

21 "purposeful availment" are distinctive concepts often applied separately to tort and contract cases,

22 respectively.  *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2003).  That

23 is, a purposeful availment analysis is most often used in suits sounding in contract.  *Id.*  And a

24 purposeful direction analysis is most often used in suits sounding in tort. *Id.*  The court will consider

25 purposeful availment for SLI's declaratory judgment claim.

26                   **a. Purposeful Availment**

27

28

**United States District Court**
For the Northern District of California

1    To have purposely availed himself of the privilege of conducting activities in the forum,

2  Melman must have "performed some type of affirmative conduct which allows or promotes the

3  transaction of business within the forum state." *Sher*, 911 F.2d at 1362.  However, "the mere

4  existence of a contract with a party does not constitute sufficient minimum contacts for jurisdiction."

5  *Id.* (citing *Burger King v. Rudzewicz*, 471 U.S. 462, 478 (1985)).  Instead, the court must look to

6  "prior negotiations and contemplated future consequences, along with the terms of the contract and

7  the parties actual course of dealing."

8    SLI has made a prima facie showing that Melman purposely availed himself of the privilege

9  of conducting activities in California.  Melman claims to have initiated discussion with Dr. Rafael

10  Fried, the Senior Vice President and General Manager of IA's Wireless Division.  IA was a company

11  founded and located in Mountain View, California that sold wireless components, some of which

12  were sold to Crow Electronics Engineering Ltd., an Israeli company of which Melman is the Chief

13  Executive Officer.  On or about February 28, 2008 Melman met with Fried in Israel to discuss IA's

14  new technology.  Melman claims he told Fried that he did not think that IA could survive

15  independently very long and that Fried agreed.

16    On March 6, 2008 Melman says he spoke with Fried who was back at IA in Mountain View,

17  California by telephone from Israel and "explained to him that [he] could find an appropriate

18  acquirer or partner for IA."  Melman decl. ¶ 10.  Melman allegedly said he did not work for free and

19  made it clear that he expected to be compensated for his efforts on behalf of IA.  Fried allegedly

20  accepted Melman's offer and assured Melman that he would be paid for his services. Melman,

21  therefore, sought and agreed to perform a service for IA which would promote the transaction of

22  business within California, namely the acquisition of IA which would enable it to survive.

23    Melman claims that after Fried agreed to pay him for his services, he spent considerable time

24  and effort in Israel to understand IA's technology and locate a potential acquirer.  Melman met in

25  Israel with representatives of Silicon Labs, Silicon Labs' distributor in Israel, and an individual from

26  Crow.  In this and subsequent telephone conferences Melman promoted the acquisition of IA by

27  Silicon Labs.  However, although Melman's promotional activities were conducted from Israel, they

28  involved communications with IA executives in California.  Melman knew that to carry out his

C-08-04030 RMW
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS
JAS                                                    4

**United States District Court**
For the Northern District of California

1 alleged agreement to procure an acquiring company for IA, he would have to deal with business

2 people governed by California's business and legal environment.  In summary, Melman reached out

3 to IA, a California company, to hire him to find an acquisition partner, Melman knew any

4 acquisition agreement would involve at least one California company and have to be carried out in

5 the California business and legal environment and would involve communications with at least  IA's

6 executives in California.

7      The circumstances here differ from those in *Sher* cited by Melman.  In *Sher*, a California

8 client sought and obtained a contract with a Florida law firm to represent him in a criminal case in

9 Florida.  The client sought to sue the firm for malpractice in California based upon the

10 representation in Florida.  The Court of Appeal held that the plaintiff's California residence

11 combined with incidental telephone calls with the client and the acceptance by the firm of payment

12 from a California bank were insufficient to support jurisdiction.[1]  Here, unlike the situation in *Sher*,

13 Melman sought the agreement from IA and his undertaking was to find a company to acquire the

14 California company, IA.  He was not working with a California resident to accomplish a business

15 deal for a California company in connection with a specific transaction in Israel.  Melman, therefore,

16 by seeking and performing his undertaking on behalf of IA, a California company, purposefully

17 availed himself of the California forum's protections.

### b. Claim Arises Out of and Relates to Melman's Forum-Related Activities

19      SLI's claim arises out of or relates to Melman's forum-related activities.  The declaratory

20 relief action would not have been filed but for Melman's alleged oral agreement to procure an

21 acquisition partner for IA.  His forum-related contacts were all in relation to the alleged agreement

22 and performance of it.

### c. Specific Jurisdiction Over Melman Is Reasonable

24      Since SLI has made a prima facie showing on the first two prongs of specific jurisdiction,

25 Melman must make a "compelling case that exercising jurisdiction would be unreasonable" to avoid

[1] The court did find jurisdiction over the firm based upon a deed of trust it took on California property to secure its fee.

C-08-04030 RMW
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS
JAS     5

**United States District Court**
For the Northern District of California

1  the exercise of jurisdiction over him. *Boschetto*, 539 F.3d at 1016.  This he has not done.  The

2  factors that need to balance significantly in his favor include: (i) the extent of the defendant's

3  purposeful interjection into the forum state's affairs; (ii) the burden on the defendant of defending in

4  the forum; (iii) the extent of conflict with the sovereignty of the defendant's home state; (iv) the

5  forum state's interest in adjudicating the dispute; (v) the most efficient judicial resolution of the

6  controversy; (vi) the importance of the forum to the plaintiff's interest in convenient and effective

7  relief; and (vii) the existence of an alternative forum. *Core-Vent Corp. v. Nobel Industries AB*, 11

8  F.3d 1482, 1488 (9th Cir. 1993) (citation omitted).  The only factor that appears to weigh in

9  Melman's favor is the burden on him to defend here as opposed to in Israel.  However, Melman does

10  speak English, has a business that does business in the United States and travel and communication

11  are not difficult in the modern world between business people in the two countries.  Balanced

12  against the burden of Melman having to litigate in California is the fact that he solicited the

13  opportunity to locate an acquisition partner for a California company, in carrying out his undertaking

14  he had to communicate with business people in California, and he had to understand and work with a

15  California business.  Melman's alleged success had a substantial impact on a California

16  business—his success enabled IA to survive.  It seems logical that California would have a greater

17  interest in the effect of Melman's service (the alleged acquisition and survival of a California

18  company) than Israel would in whether Melman received a commission for his services for a

19  California company.  In addition, if litigation were to proceed in Israel, SLI would have to litigate

20  there which would place a  burden on it which renders the litigation burden obligation a neutral

21  factor in determining specific jurisdiction.

22          The court does not find the exercise of specific jurisdiction to be unreasonable.

23          **2.      SLI Has Not Misused the Declaratory Judgment Act**

24          Melman asserts that SLI's complaint should additionally be dismissed on the grounds that

25  SLI has misused the Declaratory Judgment Act ("DJA") in the pursuit of its claims.  The exercise of

26  jurisdiction under the DJA is committed to the sound discretion of the federal district courts.  28

27  U.S.C. § 2201 ("In a case of actual controversy within its jurisdiction . . . any court of the United

28  States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of

C-08-04030 RMW
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS
JAS                                                               6

**United States District Court**
For the Northern District of California

1   any interested party seeking such declaration, whether or not further relief is or could be sought.").

2   The discretionary factors to be evaluated include: (1) avoidance of needless determination of state

3   law issues; (2) discouragement of forum shopping; and (3) avoidance of duplicative litigation. *See*

4   *Government Employees Ins. Co. v. Dizol,* 133 F.3d 1220, 1225 (9th Cir. 1998).[2]

5          Although this case does not involve state law issues, it does raise the question as to whether

6   Israeli or California law applies.  Melman argues that under California 's choice of law rules that

7   Israeli law applies because the alleged agreement was both made and to be performed in Israel.  If he

8   is correct that Israeli law applies, that would favor the Israeli forum because it would be better

9   equipped to determine the applicable Israeli law.  The court, however, does not find that Israeli law

10  necessarily applies.  Although based upon the briefing and the factual information presented, the

11  court is not prepared to finally decide the issue at this point of whose law applies, it notes that the

12  alleged agreement was accepted by Fried in California and Melman's alleged success in finding a

13  company to acquire IA had a substantial impact on both IA and SLI in California.

14          Melman accuses SLI of forum shopping because it knew at the time it filed in California that

15  Melman intended to file in Israel.  It claims that SLI's suit was filed in an effort to preempt any suit

16  filed by Melman in Israel.  SLI's declaratory relief action was undoubtedly filed in part to try to

17  insure that any dispute with Melman was tried in California.  The court gives little weight to the fact

18  that SLI filed first in California.  On the other hand, SLI's filing was not in bad faith as SLI had been

19  threatened with suit and was entitled to get the matter resolved.  SLI has made appropriate use of the

20  Declaratory Judgment Act.

21              **3.       The Doctrine of *Forum Non Conveniens***

22          Melman contends that SLI's case should be dismissed under the doctrine of *forum non*

23  *conveniens*.  "In a motion to dismiss on the ground of forum non conveniens, the burden of proving

24  an alternative forum is the defendant's and . . . the remedy must be clear before the case will be

25  dismissed. . . . Accordingly, appellee must  prove the existence of an adequate alternative forum and

26

27  [2]  The court will not consider SLI's interference with prospective economic advantage claim in its
    analysis because that claim as it now stands fails to state a claim upon which relief may be granted.
28  *See infra.*

**United States District Court**
For the Northern District of California

1   that private and public interest factors favor dismissal." *Contact Lumber Co. v. P.T. Moges Shipping*

2   *Co. Ltd.,* 918 F.2d 1446, 1449 (9th Cir. 1990) (Internal citations omitted).

3        The Israeli forum may be adequate alternative forum.  The claim by Melman appears capable

4   of being litigated in Israel, assuming the Israeli court found that it had jurisdiction over SLI.

5   However, that does not dictate that the case should be dismissed in favor of the Israeli forum.  The

6   private and public interest factors do not favor dismissal of the instant litigation.  Courts consider the

7   following private interest factors:

8        (1) the residence of the parties and the witnesses;
         (2) the forum's convenience to the litigants;
9        (3) access to physical evidence and other sources of proof;
         (4) whether unwilling witnesses can be compelled to testify;
10       (5) the cost of bringing witnesses to trial;
         (6) the enforceability of the judgment; and
11       (7) all other practical problems that make trial of a case easy, expeditious and
         inexpensive.
12
*Lueck v. Sundstrand Corp.*, 236 F.3d 1137, 1145 (9th Cir. 2001) (internal quotations omitted).
13
Neither side has proved that these factors weigh in its favor.
14
        In addition, courts consider the following public interest factors:
15
        (1) local interest of lawsuit;
16       (2) the court's familiarity with governing law;
         (3) burden on local courts and juries;
17       (4) congestion in the court; and
         (5) the costs of resolving a dispute unrelated to this forum.
18
*Id.* at 1147.  The court does not find that the public interest factors weigh in favor of dismissal.  If
19
California law applies, the court here obviously is more familiar with the governing law.
20
        The court denies Melman's motion to dismiss based upon the doctrine of *forum non*
21
*conveniens*.
22
**B.    SLI's Intentional Interference Claim Fails to State a Claim on Which Relief Can Be**
23      **Granted**

24       SLI's intentional interference claim fails to give Melman "fair notice" of the claim or more

25   than labels and conclusions.  It provides a mere "formulaic recitation of the elements of a cause of

26   action."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see* Fed. R. Civ. P. 8(a)(2).  To

27   state a claim for intentional interference with prospective business relations under California law,

28   the plaintiff must set forth factual allegations supporting: (1) that it had an economic relationship

C-08-04030 RMW
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS
JAS                                                          8

<div style="text-align: left; writing-mode: vertical">**United States District Court**
For the Northern District of California</div>

1  with a third party, with the probability of future economic benefit to the plaintiff; (2) the defendant

2  knew of the relationship; (3) the defendant acted intentionally to disrupt the relationship; (4) the

3  relationship actually was disrupted; (5) plaintiff suffered economic harm, proximately caused by the

4  defendant's actions; and (vi) the defendant's conduct was wrongful by some legal measure other than

5  the fact of interference itself. *See Della Penna v. Toyota Motor Sales, U.S.A.*, 11 Cal. 4th 376, 380

6  fn 1 (1995). The assertion that Melman "disparaged" SLI is not adequate to show that Melman

7  engaged in any conduct that was wrongful by some measure other than the alleged interference

8  itself. The complaint fails to allege that Melman knowingly or recklessly made any specific false

9  and injurious statements of fact. The court is left with the impression after reading the interference

10  claim that SLI has no more than a suspicion that Melman may have acted wrongfully. The pleading

11  is not sufficient to satisfy *Twombly* and Federal Rule of Civil Procedure 8(a)(2). Therefore, the

12  motion to dismiss the interference claim is granted with twenty days leave to amend if SLI can do so

13  meeting the requirements of Federal Rule of Civil Procedure 11.

14  <div style="text-align: center">**III. ORDER**</div>

15  The motion to dismiss is denied except as to the request that the interference with prospective

16  economic advantage claim be dismissed for the failure to state a claim upon which relief can be

17  granted. As to that claim, the motion is granted. SLI is given twenty days leave to amend.

18

19

20  DATED:      07/09/09                        *Ronald M Whyte*

                                                               RONALD M. WHYTE

21                                                                 United States District Judge

22

23

24

25

26

27

28

C-08-04030 RMW
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS
JAS                                                              9

**Notice of this document has been electronically sent to:**

**Counsel for Plaintiff:**

Megan Rae Whyman Olesek          megan.olesek@dlapiper.com
Jennifer Anne Lloyd              jenny.lloyd@dlapiper.com

**Counsel for Defendants:**

Christopher L. Wanger            cwanger@manatt.com

Counsel are responsible for distributing copies of this document to co-counsel that have not registered for e-filing under the court's CM/ECF program.

**Dated:**      07/09/09                              JAS
                                              **Chambers of Judge Whyte**

**United States District Court**
For the Northern District of California

C-08-04030 RMW
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS
JAS                                          10