**E-FILED on**   5/4/10

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| SILICON LABS INTEGRATION, INC., a California corporation (formerly known as Integration Associates Incorporated),<br><br>    Plaintiff,<br><br>    v.<br><br>SHMUEL MELMAN,<br><br>    Defendant. | No. C-08-04030 RMW<br><br>ORDER DENYING DEFENDANT'S MOTION FOR SANCTIONS<br><br>**[Re Docket No. 61]** |

    Defendant Shmuel Melman ("Melman") moves for sanctions against plaintiff Silicon Labs Integration, Inc. ("SLI"). For the reasons set forth below, the court denies the motion.

## I. BACKGROUND

    Plaintiff is a California corporation that designs and manufactures semiconductors for radio frequency, infrared, modem, and power management applications and was formerly known as Integration Associates ("IA"). Silicon Labs, Inc. ("Silicon Labs") acquired IA on June 28, 2008. Following the acquisition, the merged companies became known as SLI. Defendant Melman is the CEO of Crow Electronics Engineering ("Crow"), an Israeli corporation that manufactures electronic security systems. Melman claims that IA agreed to compensate him for finding a suitable company to acquire IA. SLI disputes his entitlement to any commission or compensation and claims that after it refused to pay, Melman retaliated by wrongfully interfering with SLI's economic relationship with its customers.

In its First Amended Complaint ("FAC"), SLI seeks a declaratory judgment that it has no obligation or liability, contractual or otherwise, to Melman.  SLI also asserts a claim of intentional interference with prospective economic advantage against Melman.  Melman contends that SLI violated Federal Rule of Civil Procedure 11 by: (1) filing a FAC containing a claim of intentional interference with prospective economic advantage without undertaking reasonable inquiry sufficient to form a belief that the claim was viable and (2) continuing to pursue the claim after being put on notice of the lack of evidentiary support.  Melman seeks the following sanctions: (1) dismissal of the interference claim, (2) monetary sanctions in the amount of $15,000 for attorneys' fees and costs incurred by Melman in responding to the interference claim, and (3) dismissal of SLI's declaratory relief claim.

## II.  ANALYSIS

### A.  Rule 11 Obligations

By filing a pleading, an attorney "certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . [that] the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery."  Fed. R. Civ. P. 11(b).  The court may impose sanctions for violation of Rule 11 if it finds that a filing is "*both* baseless [from an objective perspective] *and* made without a reasonable and competent inquiry."  *In re Keegan Mgmt. Co., Sec. Litig.*, 78 F.3d 431, 434 (9th Cir. 1996) (quoting *Townsend v. Holman Consulting Corp.*, 929 F.2d 1358, 1362 (9th Cir. 1990)).

Although SLI appears to have performed a reasonable inquiry given the issues involved, the number of witnesses interviewed, and the documents reviewed, the troublesome question is whether SLI found evidentiary support for filing and continuing in the prosecution of its intentional interference with prospective economic advantage claims.

### B.  Evidentiary Support for Factual Assertions

#### 1.  Allegations in the First Amended Complaint

The required elements for a claim of intentional interference with prospective economic advantage are: (1) an economic relationship between the plaintiff and some third party with the

probability of future economic benefit to the plaintiff; (2) defendant's knowledge of the relationship; (3) intentional wrongful acts by the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) damages to the plaintiff proximately caused by the defendant's wrongful acts. *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1153 (2003). Melman claims that SLI's allegations supporting the third element – intentional wrongful acts by Melman designed to disrupt the relationship between IA and two of its customers – lack evidentiary support. In particular, Melman argues that the various allegations in the FAC made upon information and belief lack evidentiary support.

The allegations in the FAC made upon information and belief basically assert that Melman made false statements about IA's products to IA's customers, including Telematics Wireless, Ltd. ("Telematics") and Inovonics Wireless Corporation ("Inovonics"). FAC ¶¶ 24, 27, 28, 29. The FAC also specifically alleges upon information and belief that Melman made false statements to Telematics regarding alleged leakage of the IA4432. *Id.* at ¶ 27.

In addition to statements made upon information and belief, however, the FAC also contains the following allegations from which one could reasonably infer that Melman made false statements to Telematics about IA's products, in particular regarding alleged leakage of the IA4432: (1) in July 2008, Melman told an IA representative that he intended to call Telematics to tell them to cease doing business with IA; (2) in late July 2008, a Telematics representative began to question IA's representative about alleged leakage in the IA4432 product, despite the fact that this product had never demonstrated any such defect; (3) one of IA's other products, the IA4221, which had been sold to Melman via Crow, was the product that had experienced leakage issues in the past; and (4) Melman had a personal relationship with high-level personnel at Telematics at this time. FAC ¶¶ 26-27.

Likewise, the FAC contains the following allegations (not made upon information and belief), from which one could reasonably infer that Melman made false statements about IA's products to Inovonics: (1) in July 2008, Melman told an IA representative that he intended to call Inovonics to tell them to cease doing business with IA; (2) around late July and early August 2008, Inovonics's tone and approach to its agreement with IA changed drastically, with Inovonics suddenly

questioning IA and claiming that it had allegedly detected problems with IA's products; (3) Melman had a relationship with Inovonics at this time; and (4) Inovonics had originally engaged in business with IA based on Melman's recommendation. *Id.* at ¶¶ 26, 28.

As explained in the court's March 8, 2010 order denying Melman's motion to dismiss the FAC, these allegations allow one to reasonably infer that Melman made false statements about IA's products and thus are sufficient to establish the intentional wrongful act element of the interference tort. The critical question on the current motion, however, is whether these allegations have any factual basis.

## 2. Sources of Evidence Supporting Allegations

SLI's counsel declares that counsel initially interviewed at least three individuals purporting to have knowledge of Melman's threats and later interviewed another eight individuals. Counsel has also collected and reviewed numerous documents. SLI offers the following evidentiary support: (1) according to Meni Biran, former regional sales director for IA, Melman said he planned to call all of his contacts in the industry, including Telematics and Inovonics, to ensure that IA did not get any future business, Lloyd Decl. ¶ 5; (2) Dr. Rafael Fried, former Senior Vice President and General Manager of IA's Wireless Division, believed that Melman made false statements to Inovonics because Inovonics was originally referred to IA by Melman, and Inovonics began asking questions about alleged performance issues with IA parts, Fried Decl. ¶ 31, Nov. 21, 2008; and (3) according to Jennifer Lloyd, counsel for SLI, Dr. Fried "has knowledge of the facts stated in Paragraphs 24-28 of the Complaint,"[1] Lloyd Decl. ¶ 6. Those facts include: (a) after IA denied Melman's demand for compensation, in July 2008 Melman told an IA representative that he planned to call all of his contacts in the industry to ensure IA and Silicon Laboratories would get no further business; (b) in late July 2009 Melman told an IA representative that he planned to report alleged problems with the

---

[1] The court has not considered any facts purportedly based upon information and belief. No explanation was provided by SLI as to what information allowed it (or Dr. Fried) to assert the beliefs alleged. The court has some reluctance to even consider the facts from Dr. Fried that Attorney Lloyd said he provided since to a large extent they are not mentioned in Dr. Fried's November 21, 2008 declaration and are set forth only by reference to paragraphs of the First Amended Complaint. If, as the case develops, Melman learns that Dr. Fried does not have knowledge of the facts the court has assumed he has based upon the statement in Attorney Lloyd's declaration that Dr. Fried "has knowledge of the facts stated in Paragraphs 24-28 of the Complaint," Melman can seek reconsideration or other appropriate relief.

EZRadio Pro chip to potential IA customers in violation of his company's confidentiality agreement with IA; (c) on or about July 25, 2009 Melman e-mailed another IA representative that he had talked to another serious customer of IA about problems with the EZRadio Pro Chip; (d) on or about July 21, 2008 Melman called a representative of IA and told him that he was intending to call IA's customers in the U.S. and Israel, including Telematics Wireless and Inovonics, and to tell them to cease doing business with IA; (e) in late July 2008 a Telematics representative began questioning an IA representative about leakage issues with respect to the IA4432 product which had never suffered leaks; (f) in July 2008 Melman had a personal relationship with high-level personnel at Telematics; (g) one of IA's other products, the IA4221, which had been sold to Melman via Crow, had experienced leakage issues in the past; (h) in July and August 2008 Inovonics, with whom IA was involved in sales discussions, drastically changed its tone and began questioning IA about alleged problems with IA products; and (i) in July and August 2008 Melman had a relationship with Inovonics.

Although SLI apparently lacks direct evidence that Melman made specific statements, such as ones concerning leakage of the IA4432 product, to particular representatives of Telematics and Inovonics, SLI has sufficient information to justify a belief that it will likely have evidentiary support of those statements with further investigation or discovery.

Melman makes much of the fact that he provided SLI with declarations from Eddy Kafri, president and CEO of Telematics, and Mark Jarman, president of Inovonics. Kafri declares that Melman never made any disparaging statements to him about IA's products and never suggested that Telematics should refrain from doing business with IA. Kafri Decl. ¶¶ 8-9. Based upon information and belief, he also states that Melman has not made such statements or suggestions to anyone else at Telematics. *Id.* He states that Telematics' decision not to purchase the IA4432 chip from IA had nothing to do with Melman. *Id.* at ¶ 11. Jarman declares that Melman never made any disparaging statements to him about IA's products and never suggested that Inovonics should refrain from doing business with IA. Jarman Decl. ¶¶ 6-7. Based upon information and belief, he also states that Melman has not made such statements or suggestions to anyone else at Inovonics. *Id.*

1  　　　As SLI points out, these declarations fall short of showing that either Kafri or Jarman had
2  personal knowledge regarding whether Melman made false statements about IA's products to other
3  individuals at their respective companies.  Moreover, even taking their broad statements (that
4  Melman has not made any statements to anyone at Inovonics or Telematics about problems with IA's
5  products) at face value, SLI is not precluded from bringing suit for intentional interference with
6  prospective economic relations, provided that it has other evidence tending to contradict Kafri and
7  Jarman's declarations.

### III. ORDER

　　　For the foregoing reasons, the court, despite some concerns about SLI's evidentiary support
for its allegations, denies the motion for sanctions.

DATED:　　　5/4/10

*Ronald M Whyte*
RONALD M. WHYTE
United States District Judge

**Notice of this document has been electronically sent to:**

**Counsel for Plaintiff:**

Helen Scharf Rakove     hsr@hogefenton.com
Jennifer Anne Lloyd     jenny.lloyd@dlapiper.com
Shella Deen     sd@hogefenton.com

**Counsel for Defendant:**

Amanda Marie Knudsen     aknudsen@manatt.com
Christopher L. Wanger     cwanger@manatt.com

Counsel are responsible for distributing copies of this document to co-counsel that have not registered for e-filing under the court's CM/ECF program.

**Dated:**    5/4/10                      CCL
                                                      **Chambers of Judge Whyte**